# IN THE UNITED STATES BANKRUPTCY COURT FOR THE
# EASTERN DISTRICT OF TENNESSEE

In re

SHAWN PATRICK SEXTON

Case No. 3:19-bk-33412-SHB
Chapter 7

Debtor

ANN MOSTOLLER, TRUSTEE

Plaintiff

v.

Adv. Proc. No. 3:20-ap-3033-SHB

ELIZABETH SEXTON

Defendant

## MEMORANDUM ON CROSS MOTIONS FOR SUMMARY JUDGMENT

APPEARANCES:   MOSTOLLER, STULBURG & WHITFIELD
    Ann Mostoller, Esq.
    136 South Illinois Avenue
    Suite 104
    Knoxville, Tennessee  37830
    Attorneys for Plaintiff

    MAYER & NEWTON
    John P. Newton, Jr., Esq.
    1111 Northshore Drive
    Suite S-570
    Knoxville, Tennessee  37919
    Attorneys for Defendant

**SUZANNE H. BAUKNIGHT**
**UNITED STATES BANKRUPTCY JUDGE**

Plaintiff filed the Complaint [Doc. 1] to initiate this adversary proceeding on July 2, 2020, asking the Court to avoid a pre-petition transfer from Debtor to Defendant pursuant to 11 U.S.C. § 548.[1] Presently before the Court are Plaintiff's Motion for Summary Judgment ("Plaintiff's Motion") with supporting documents [Docs. 13, 14, 15] and Defendant's Motion for Summary Judgment and Motion to Dismiss ("Defendant's Motion") with supporting documents [Docs. 23, 24, 25, 41[2]]. In her Motion, Plaintiff argues that summary judgment is appropriate because Debtor received less than reasonably equivalent value for the transfer he made to Defendant. On the other side, Defendant argues not only that the undisputed facts establish that she gave reasonably equivalent value for the transfer, but also that Plaintiff has failed to state a claim upon which relief may be granted so that the Court should dismiss Complaint. The parties each oppose the other's motion. [Docs. 26, 27, 28, 30, 36, 37, 38, 42.]

Based on the record, because the Court finds there is no genuine dispute of material fact about whether Debtor received reasonably equivalent value for the transfer he made to Defendant, the Court will enter judgment in favor of Defendant and dismiss this adversary proceeding.

## I.  Undisputed Facts

The parties have stipulated and/or the record reflects the following facts. Debtor and Defendant, who were married in October 1992, were divorced on June 8, 2018, in the Circuit Court for Russell County, Alabama, as reflected in the Final Divorce Judgment and Decree,

---

[1] This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(J).

[2] The Court entered an Order on February 19, 2021 [Doc. 39], declining to deny Defendant's Motion solely on procedural grounds and giving Defendant the option to cure deficiencies with her Statement of Undisputed Facts [Doc. 25], which did not comply with the requirements of E.D. Tenn. LBR 7056-1(a), by filing an amended and compliant statement of undisputed facts, with Plaintiff allowed an opportunity to file a response. Defendant filed her Amended Statement of Undisputed Facts on February 25, 2021 [Doc. 41], and Plaintiff filed her Response to Defendant's Amended Statement of Undisputed Facts on March 11, 2021 [Doc. 42].

incorporating therein the parties' Settlement Agreement ("Final Decree") [Docs. 15 at ¶ 1, 15-1 (Ex. A), 28 at ¶ 1, 41 at ¶ 3, 41-1, 42 at ¶ 3.]  At the time of the divorce, Debtor and Defendant resided in a home located at 1205 Ilex Court, McDonough, Georgia ("Property"). [Docs. 15-1 (Ex. B), 23-1 at ¶ 4, 30-1 at ¶ 4.]  Notwithstanding that Debtor alone had purchased the Property in 2016, because both Debtor and Defendant contributed to the household expenses and budget for the mortgage payment, Defendant retained the Property under the Final Decree, assuming certain obligations. [Docs. 23-1 at ¶ 4, 30-1 at ¶ 4.]  Specifically, the Final Decree states the following:

> (f)  The Wife shall have sole use and possession of the real property and residence located at 1205 Ilex Court, McDonough, Georgia.  The Wife shall be solely responsible for timely maintaining all indebtedness secured by the property, taxes, utilities and maintenance; and, she shall indemnify and hold Husband harmless from any liability resulting therefrom.  The Wife agrees to refinance the home out of the name of the Husband, no later than two (2) years from the entry of the Final Divorce Decree.  In the even [sic] the Wife fails to refinance the property in the aforesaid two (2) year period, the Wife may be allowed additional time to refinance or the residence shall be placed for sale on the open market, either option at the Husband's discretion.

[Docs. 15-1 (Ex. A), 41-1.]  The Final Decree also provides the following:  "Husband and Wife agree to execute and deliver to the other party any documents and take any action reasonably necessary to establish title to the property covered by this agreement or to accomplish any of the terms of this agreement." [Doc. 41-1 at p. 6.]

After the divorce, Defendant continued to reside in the Property until it was sold by agreement of Debtor and Defendant on August 23, 2019, more than nine months before the expiration of Defendant's two-year deadline to refinance the Property and Debtor's commensurate right to sell the Property (or allow additional time for Defendant to refinance) under the Final Decree. [Docs. 15 at ¶ 4, 23-1 at ¶ 3, 28 at ¶ 4, 30-1 at ¶ 3, 41-1, 41-2.]  The closing of the sale extinguished Debtor's obligation under the mortgage and yielded net proceeds

of $42,626.62, from which Debtor paid $21,323.31[3] to Defendant on August 30, 2019. [Docs. 15 at ¶ 5, 15-1 (Ex. C), 28 at ¶ 5, 41 at ¶¶ 4, 10, 41-2, 42 at ¶¶ 4, 10.]

The Final Decree did not provide for Debtor to receive any equity in the Property if Defendant exercised her right under the Final Decree to refinance the Property within the two-year period. [Docs. 41-1.] Further, the Final Decree was silent as to distribution of any sale proceeds if Debtor elected to sell the Property after expiration of the two-year refinancing period. [*See* Doc. 41-1.]

Debtor filed the Voluntary Petition commencing his Chapter 7 bankruptcy case on October 21, 2019, and Plaintiff was appointed as Chapter 7 Trustee. [Doc. 15 at ¶ 6, 28 at ¶ 6, 41 at ¶ 1, 42 at ¶ 1.] In his statements and schedules, Debtor listed assets totaling $316,185.00 and liabilities in the amount of $578,295.00. [Docs. 15 at ¶ 7, 28 at ¶ 7.] Debtor received a discharge on January 31, 2020. On July 2, 2020, Plaintiff filed this adversary proceeding to avoid the transfer from Debtor to Defendant pursuant to 11 U.S.C. § 548(a).

## II. Summary Judgment Standard

Pursuant to the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law[,]" utilizing the following procedures:

> (1) ***Supporting Factual Positions***. A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
>> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

---

[3] Although paragraph 4 of Defendant's Statement of Undisputed Facts (which was not disputed by Plaintiff in her Response to Defendant's Statement of Undisputed Facts [Doc. 41 at ¶ 4]) states that the amount was $21,323.00, the record reflects that Debtor actually transferred $21,313.31 to Defendant on August 30, 2019. [Docs. 15 at ¶ 5, 15-1 (Ex. C), 28 at ¶ 5.]

> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>
> (2) *Objection That a Fact Is Not Supported by Admissible Evidence*. A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.
>
> (3) *Materials Not Cited*. The court need consider only the cited materials, but it may consider other materials in the record.
>
> (4) *Affidavits or Declarations*. An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

Fed. R. Civ. P. 56(c) (applicable in adversary proceedings through Rule 7056 of the Federal Rules of Bankruptcy Procedure). The Court does not weigh the evidence to determine the truth of the matter asserted when deciding a motion for summary judgment but simply determines whether a genuine issue for trial exists. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

Each movant bears the burden of proving that summary judgment is appropriate by establishing that there is no genuine dispute concerning any material fact, such that any defense alleged is factually unsupported. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Once the initial burden of proof is met, the non-moving party must prove that there is a genuine dispute of material fact for trial but may not rely solely on allegations or denials contained in the pleadings. *See Nye v. CSX Transp., Inc*., 437 F.3d 556, 563 (6th Cir. 2006) (holding that reliance upon a "mere scintilla of evidence in support of the nonmoving party will not be sufficient"); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986). The facts and all resulting inferences are viewed in a light most favorable to the non-moving party,

and the Court must decide whether "the evidence presents a sufficient disagreement to require submission to a [fact-finder] or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 243. Nevertheless, when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citations omitted).

### III. Analysis

Plaintiff's cause of action arises under 11 U.S.C. § 548(a), which states, in material part:

> (a)(1) The trustee may avoid any transfer . . . of an interest of the debtor in property, or any obligation . . . incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily –
>
> . . . .
>
> (B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
>
> (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation[.]

11 U.S.C. § 548(a). Avoidance for "constructive fraud" does not include an intent element; instead, Plaintiff bears the burden of proving only the statutory elements of § 548 by a preponderance of the evidence. *Baumgart v. Ptacek (In re Ptacek)*, Adv. No. 17-1105, 2019 WL 4049842, at *8 (Bankr. N.D. Ohio Aug. 27, 2019) (citing *Lisle v. John Wiley & Sons, Inc. (In re Wilkinson)*, 196 F. App'x 337, 341 (6th Cir. 2006)). The parties do not dispute Debtor's insolvency at the time of the August 2019 transfer; instead, the sole dispute is whether he received less than reasonably equivalent value for the transfer.[4]

---

[4] Defendant asserts that Plaintiff failed to allege that the transfer was for less than reasonably equivalent value [Doc. 41 at ¶ 11]; however, the Complaint clearly alleges that Debtor "received less than full value in exchange for [the] transfer" [Doc. 1 at ¶ 4].

In support of her Motion, Plaintiff argues that Debtor did not owe any obligation to Defendant when he transferred 50% of the sale proceeds on the Property because the Property had been held in Debtor's name alone, concluding that, pursuant to the Final Decree, "Debtor and Defendant had agreed that Defendant would refinance the Property out of Debtor's name within two years . . . or Debtor had the option to sell the Property." [Doc. 14 at p. 4.]  Citing to Alabama law, Plaintiff also argues that "the separate estate of the parties in a divorce proceeding includes property owned prior to the marriage and property received by gift or inheritance during the marriage." [*Id*. at pp. 4-5 (citing Ala. Code 1975 § 30-2-51).]  In response to Plaintiff's Motion as well as through her own Motion, Defendant argues that Plaintiff has failed to provide any factual basis for either the Complaint or Plaintiff's Motion, and Defendant relies on her Affidavit and on Debtor's Affidavit, neither of which has been rebutted by Plaintiff. [Docs. 23-1, 23-2, 30-1, 30-2.]

As reflected in the Final Decree, Defendant retained possession of the Property as part of the property division in her divorce from Debtor with the agreement that she would refinance it within two years, and at the expiration of the two years, Debtor could either allow Defendant additional time to refinance or could sell the Property. [Docs. 15-1 (Ex. A), 41-1.]  In their Affidavits, Debtor and Defendant both averred that it was their express intention when they divorced that Defendant's continued possession of the Property was contingent on her refinancing the mortgage out of Debtor's name within the two-year period and that Defendant would retain any equity from the refinance. [Docs. 23-1 at ¶ 4, 23-2 at ¶ 4, 30-1 at ¶ 4, 30-2 at ¶ 4.]  They also state that well before the two-year period expired, Debtor and Defendant "mutually agreed" to sell the Property, and notwithstanding her rights under the Final Decree, Defendant agreed that Debtor "could retain 50% of the equity in exchange for 50% of the equity

for [Defendant's] share of such equity in consideration of [Defendant's] rights of possession of the [P]roperty and to compensate [Defendant] for any expenses and cost to relocate." [*Id.*]

Based on the record before it, the Court finds that Debtor received at least reasonably equivalent value for the transfer made to Defendant. For the purposes of § 548, the Bankruptcy Code defines "value" as "property, or satisfaction or securing of a present or antecedent debt of the debtor, but does not include an unperformed promise to furnish support to the debtor or to a relative of the debtor[.]" 11 U.S.C. § 548(a)(2)(A). As previously summarized by this Court:

> "[R]easonably equivalent value is not an esoteric concept: a party receives reasonably equivalent value for what it gives up if it gets 'roughly the value it gave[,]'" *VFB, LLC v. Campbell Soup Co.,* 482 F.3d 624, 631 (3d Cir. 2007) (quoting *Pension Transfer Corp. v. Beneficiaries Under Third Amend. to Fruehauf Trailer Corp. Ret. Plan No. 003 (In re Fruehauf Trailer Corp.),* 444 F.3d 203, 213 (3d Cir. 2006)), and is not limited "to money nor to value transferred pursuant to a valid contract." *For Your Ease Only, Inc. v. Calgon Carbon Corp.,* 560 F.3d 717, 722 (7th Cir. 2009). The Sixth Circuit has stated the following with respect to reasonably equivalent value:
>
>> The BAP noted correctly that 'reasonably equivalent' is not defined by the Bankruptcy Code, but focus has been placed upon the consideration received by the debtor, not the value given by the transferee:
>>
>>> [T]he proper focus is on the net effect of the transfers on the debtor's estate, the funds available to the unsecured creditors. As long as the unsecured creditors are no worse off because the debtor, and consequently the estate, has received an amount reasonably equivalent to what it paid, no fraudulent transfer has occurred.
>>
>> *Harman v. First Am. Bank of Md. (In re Jeffrey Bigelow Design Grp., Inc.),* 956 F.2d 479, 484 (4th Cir. 1992). "[I]t is clear that the debtor need not collect a dollar-for-dollar equivalent to receive reasonably equivalent value." *Butler Aviation Int'l, Inc. v. Whyte (In re Fairchild Aircraft Corp.),* 6 F.3d 1119, 1125–26 (5th Cir. 1995).
>
> *Congrove v. McDonald's Corp. (In re Congrove),* 222 F. Appx. 450, 454, 2007 WL 130414, at *3, 2007 U.S. App. LEXIS 764, at *9–10 (6th Cir. Jan. 10, 2007). In essence, "[a] determination of reasonably equivalent value is 'fundamentally one of common senses, measured against market reality.'" *Lindquist v. JNG Corp. (In re Lindell,* 334 B.R. 249, 256 (Bankr. D. Minn. 2005) (quoting *In re Northgate Computer Sys., Inc.,* 240 B.R. 328, 365 (Bankr. D. Minn. 1999)).

> The determination does not turn on whether "the value of what went out, i.e., the value of the Property, exceeded the value of what came in, i.e., the total consideration[,]" as "[t]here is no set minimum percentage or monetary amount necessary to constitute reasonably equivalent value[.]" *Lowe v. B.R.B. Enters., Ltd. (In re Calvillo)*, 263 B.R. 214, 220 (W.D. Tex. 2000).; *accord Staats v. Butterworth Props., Inc. (In re Humble),* 19 F. App'x 198, 200, 2001 WL 1006148, at * 1, 2001 U.S. App. LEXIS 19093, at *4 (6th Cir. Aug. 20, 2001) ("Courts have rejected fixed mathematical formulae to determine whether an exchange of 'reasonably equivalent values' has occurred for purposes of section 548 in favor of analysis based upon the facts and circumstances of each particular case."). Nevertheless, while there is no minimum percentage or amount required, "the phrase 'reasonably equivalent value' means 'approximately equivalent' or 'roughly equivalent.'" *BFP v. Resolution Trust Corp.,* 511 U.S. 531, 114 S. Ct. 1757, 1762 n. 4, 128 L.Ed.2d 556 (1994).

*BankEast v. Shirley (In re Shirley)*, Adv. Nos. 10-3031, 10-3032, 2011 WL 4054773, at *10 (Bankr. E.D. Tenn. Sept. 12, 2011).

Because "the standards for measuring the fairness of a property division in the domestic relations arena and reasonably equivalent value in a fraudulent transfer case are separate and distinct," the Court cannot presume that the division would satisfy the requirements of § 548(a) when examining whether provisions within a divorce decree constitute reasonably equivalent value so that it must conduct its own analysis. *Corzin v. Fordu (In re Fordu)*, 201 F.3d 693, 707 (6th Cir. 1999).

> In assessing this value, courts generally consider many factors, including the good faith of the parties, the disparity between the fair value of the property and what the debtor actually received, and whether the transaction was at arm's length. It is critical for bankruptcy courts to examine all aspects of the transaction and carefully measure the value of all benefits and burdens to the debtor, direct or indirect.

*Nathan v. Libra (In re Libra)*, 584 B.R. 550, 560 (Bankr. E.D. Mich. 2018) (internal quotations, brackets, and citations omitted).

Alabama law directs that marital estates are "subject to equitable division and distribution." Ala. Code § 30-2-51(b)(1). For property acquired before the marriage or by

inheritance or gifts, the court may use its discretion to include such property that "has been used regularly for the common benefit of the parties during their marriage." Ala. Code § 30-2-51(a). Both Plaintiff and Defendant reference this statute in their respective briefs; however, based on the record, the Court finds that any reliance on subsection (a) is misplaced because even though the Property was titled only in Debtor's name, the Warranty Deed attached as Exhibit B to Plaintiff's Statement of Undisputed Material Facts reflects that the Property was purchased in 2016 [Doc. 15-1 (Ex. B)], more than twenty years after Debtor and Defendant were married in 1992, and that they had lived together in the Property as their marital residence from its purchase until the time of their divorce. [Docs. 23-1 at ¶ 4, 23-2 at ¶ 4, 30-1 at ¶ 4, 30-2 at ¶ 4.]  Thus, under Alabama law, the Property served as the marital residence and was required to be equitably divided. *See Culver v. Culver*, 199 So. 3d 772, 777 (Ala. Civ. App. 2016) (applying section 30-2-51(a) to reverse the trial court's award of the entire interest in the marital home to the husband, who was the sole owner of record and solely obligated on the mortgage); *McCarron v. McCarron*, 168 So. 3d 68, 73 (Ala. Civ. App. 2014) (affirming the trial court's determination that a beach house inherited by the husband was marital property because marital funds had been used to purchase other heirs' shares and the wife had helped maintain the house and lived there together).

Defendant and Debtor submit that they intended by their agreement incorporated into the Final Decree for Defendant to receive the entire Property contingent on her refinancing the mortgage to remove Debtor's obligation within two years of the Final Decree. [Docs. 23-1 at ¶ 4, 23-2 at ¶ 4.]  Given that Alabama law requires equitable distribution of marital property, the expressed intent of Defendant and Debtor makes sense, and in any event, it was not rebutted by Plaintiff. Surely the parties and the state court did not intend that Defendant would refinance the

mortgage so that Defendant's payment of the mortgage would create equity for Debtor and not for Defendant.  The inclusion of a provision in the Final Decree for execution and delivery of documents necessary to accomplish the terms of the agreement also would seem to bear on the question favorably towards Defendant.

Nevertheless, the Final Decree does not control because the parties reached an agreement that differed from the dictates of the Final Decree, and that agreement establishes that Debtor, in fact, did receive at least reasonably equivalent value for the transfer.  When he and Defendant divorced, Defendant retained possession of the Property as directed by the Final Decree; however, the mortgage remained in Debtor's name (pending planned refinancing by Defendant). Although Defendant was required by the Final Decree to pay the mortgage payments, Debtor nevertheless remained financially obligated on the mortgage until such time as Defendant refinanced the mortgage "out of the name of [Debtor]" [Doc. 41-1 at p. 5].  After the two-year deadline for refinancing, Debtor could have chosen at his discretion to sell the Property or give Defendant additional time to refinance the mortgage. [*Id.*]  Critically, however, the two-year period had not expired for such refinancing when the Property was sold.  Thus, Defendant agreed to relinquish her court-ordered right to possess the Property and allowed Debtor to sell it in exchange for each of them receiving 50% of the net equity after the sale. [Docs. 23-1 at ¶¶ 4-6, 23-2 at ¶¶ 4-6, 30-1 at ¶¶ 4-6, 30-2 at ¶¶ 4-6.]  This agreement between Debtor and Defendant allowed Debtor to receive $21,313.31 that he would not otherwise have received had Defendant simply refinanced the mortgage as required by the Final Decree.  Further, Debtor received additional value because the sale, which was made possible only by Defendant's agreement to forego her rights under the Final Decree, extinguished Debtor's mortgage obligation in the amount of $161,456.70 [*see* Doc. 41-2], thus providing him a benefit that, under the provisions

of the Final Decree, he might not have received before June 2020.

## IV.  Conclusion

Plaintiff has failed to prove that the undisputed facts establish that Debtor did not receive reasonably equivalent value when he transferred $21,323.31 to Defendant on August 30, 2019, representing 50% of the net equity from the sale of the Property.  Defendant, however, has shown that the undisputed facts establish that Debtor did receive reasonably equivalent value for the transfer of the funds to Defendant.  Accordingly, Plaintiff's Motion will be denied, summary judgment will enter for Defendant, and this adversary proceeding will be dismissed.

A Judgment consistent with this Memorandum will be entered.

FILED:  April 5, 2021

BY THE COURT

*s/ Suzanne H. Bauknight*

SUZANNE H. BAUKNIGHT
UNITED STATES BANKRUPTCY JUDGE